### Henry Bush v. The State.

#### No. 4168. Decided October 25, 1916.

**1.—Murder—Expert Testimony—Opinion of Witness.**

Upon trial of murder, there was no error in permitting the physician who examined deceased to testify that in his opinion, the wound on deceased's forehead was caused by a blow from some blunt instrument, and that the nature of the blow was such that it would have felled deceased, and rendered him unconscious. Following Waite v. State, 13 Texas Crim. App., 169.

**2.—Same—Witness—Credibility of Witness.**

Where the State was permitted to show that one of defendant's witnesses had been indicted and convicted of theft, but it was developed by the defendant that the sentence had been suspended, and the court, thereupon, excluded all testimony as to his conviction, but permitted the evidence that said witness had been indicted for theft to remain before the jury, there was no reversible error.

**3.—Same—Evidence—Impeaching Testimony.**

Where the purpose of the testimony was admitted for the purpose of impeaching witnesses, and so limited, the contention that it was not admissible as original testimony, presented no error.

**4.—Same—Character of Deceased—General Reputation.**

Where defendant was permitted, upon trial of murder, to prove that deceased had a bad reputation as a peaceable, law-abiding citizen, there was no error in refusing to permit defendant to prove that the deceased had a bad reputation as a bootlegger, and for selling liquor without obtaining a license; deceased's res gestae statement, or any other statement of his, not being in evidence.

**5.—Same—Self-defense—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue that defendant provoked the difficulty, and the court submitted a proper charge thereon, without restricting defendant's right of self-defense unless he did provoke the diffi-

culty, and was not on the weight of the evidence, when taken as a whole, there was no reversible error.

**6.—Same—Requested Charges.**

Where the requested charges were covered by the court's main charge, there was no error in refusing them, and special charges not contained in the record can not be considered.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*King & Seale,* for appellant.—On question of provoking difficulty: Lockhart v. State, 111 S. W. Rep., 1024; Pollard v. State, 73 id., 953; Branch's Criminal Law, sec. 1955.

On question of imperfect right of self-defense: Young v. State, 41 Texas Crim. Rep., 442; Branch, Criminal Law, sec. 1951.

On question of converse proposition of provoking difficulty: McGregor v. State, 160 S. W. Rep., 711; Branch's Crim. Law, sec. 1958.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of opinion of medical men: Betts v. State, 60 Texas Crim. Rep., 631; Streight v. State, 62 id., 453; Lacoume v. State, 143 S. W. Rep., 626; Williams v. State, 144 id., 622; Girtman v. State, 164 id., 1008; Nesbit v. State, 171 id., 1126, and cases cited in opinion.

On question that witness was indicted: Davis v. State, 57 Texas Crim. Rep., 165; Simonds v. State, 175 S. W. Rep., 1064; Vernon's C. C. P., p. 712.

On question of reputation of deceased: Davis v. State, 172 S. W. Rep., 978.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at fifteen years confinement in the State penitentiary.

From the evidence it is apparent that trouble, prior to the fatal encounter, existed between deceased, Bud Lewis, and appellant on account of attentions each was paying to a colored girl, Willie May Bonnepart. The State introduced threats appellant had made, and appellant introduced evidence of threats deceased had made, thus both sides introducing evidence of previous ill-will. Both sides agree that the evening of the homicide deceased carried Willie May Bonnepart, Lollie Tolbert, and Jessie Brantley to Caro, Clifford Sleet driving the automobile. The State's case is, when appellant learned of these facts he stationed himself on a bridge he knew they would pass in returning to the home of Willie May Bonnepart, and when the party was driving across the bridge appellant drew his pistol, flagged the car, and said, "If you don't stop that car I will kill you." As the car came to a stop the driver, Sleet, undertook to get out, when appellant struck

him with the pistol; that he struck Sleet the second time, felling him to his knees, when Sleet crawled away. Sleet says that just about this time he heard deceased say: "Wait a minute, Henry, and let me explain," when a shot was fired. There is no question that a number of shots were fired, and deceased was found some distance from the automobile, shot twice—once from in front and once from behind; his head also had two blows upon it, one in the forehead and the other in the back of the head.

Appellant contends that he went to take Willie May Bonnepart to church that night when he was informed she had gone to Caro with deceased; that the reason he had the pistol in his pocket was on account of the threats he had been informed deceased had made; that he was on his way home, he living near the bridge, when he saw the automobile returning; that he waved to the car to stop, intending to ask the Bonnepart girl to get out and go to church with him; that when the car stopped, deceased and Sleet both got out, and deceased drew a pistol; that Sleet was between him and Lewis, the deceased, and after deceased had drawn his pistol, he drew his pistol and struck Sleet to knock him from between him and Lewis; that he and Lewis then grappled and scuffled around for some distance, deceased in the meantime firing two shots; that after deceased had shot twice, he shot deceased and continued to shoot until deceased fell. He contends that deceased also continued to shoot.

As to whether deceased was armed that night was a very closely contested issue, and a jury would be authorized to find either way on that issue.

Dr. T. J. Blackwell was the physician who examined deceased, and he testified that he examined the wound in the forehead, describing it, and that in his opinion it was caused by a blow from some blunt instrument, and that the nature of the blow was such that it would have felled deceased and rendered him unconscious. This testimony was objected to by appellant on the ground that it was an opinion of the witness. The court committed no error in overruling the objection made. In the case of Waite v. State, 13 Texas Crim. App., 169, Judge White approved the rule, as stated in Wharton's Crim. Evidence, "The testimony of a surgeon is admissible to prove the nature of the wound and the probable cause and effect," and this is the rule always adhered to in this court where the physician is shown to be a competent one, as in this case.

On cross-examination of John Ballinger, a witness for appellant, the State was permitted to elicit from the witness that he had been indicted and convicted of theft. The defendant then developed that the sentence in that case had been suspended, and asked that the testimony of his indictment and conviction be excluded. The court excluded all testimony as to his conviction, and instructed the jury not to consider it, but permitted evidence that he had been indicted for theft to remain

before he jury. In so doing the court committed no error, as it was admissible on the credit to be given the testimony of the witness.

The testimony complained of in the third bill of exceptions was admitted for the purpose of the impeachment of the State's witnesses Lollie Tolbert and Jessie Brantley, and the court so held. It was not admissible as original testimony, as it consisted of statements made by these women after the difficulty was over.

The court permitted appellant to prove that deceased had a bad reputation as a peaceable, law-abiding citizen and as being a dangerous man. There was no error in refusing to permit appellant also to prove that he had a bad reputation as a bootlegger of whisky. This testimony could and would shed no light on this difficulty. Nor was it permissible to show that deceased had been convicted in the Federal court of selling liquor without obtaining license. Deceased was not a witness. No res gestae or other statement of his was introduced in evidence against appellant, thus his credit as a truthful man was not an issue in the case.

After giving a full and fair charge on self-defense, as made by the testimony offered in behalf of appellant, and which charge is in no way complained of by appellant, the court instructed the jury:

"You are further instructed on the question of self-defense that if you find from the evidence, beyond a reasonable doubt, that the defendant, Henry Bush, made an attempt to stop the car that Bud Lewis was in, for an unlawful purpose, and that in stopping said car, if he did so, the defendant drew his pistol and intimidated the party driving said car and knowingly brought on the difficulty with said Lewis by such acts, if any, with the intention of killing said Lewis, if the said Lewis should resent the same, the defendant would not be justifiable in killing said Lewis, although after the starting of such trouble, if any, by the defendant, if you find he did so, it became necessary to kill said Lewis to prevent Lewis from killing him; but if you have a reasonable doubt as to whether or not the defendant stopped the car and made an attack on the occupant of said car with a pistol for an unlawful purpose, you will give the defendant the benefit of such doubt and consider and apply the rules of self-defense as above given you in charge."

Appellant in his bill of exceptions and in the brief filed in this court says such a charge was uncalled for; that it was an undue limitation on his right of self-defense; that it is upon the weight of the evidence, and because the court did not instruct the jury that appellant had the right to stop the car for the purpose of asking an explanation and having an interview with deceased, etc.

We do not think the charge is upon the weight to be given the evidence, but a mere statement of the law in case the jury finds a certain state of facts to be true. As to the charge being uncalled for by the testimony, we think it aptly presents the law as applicable to the evi-

dence in this case. Appellant himself testifies that deceased had made threats to take his life about this girl, and he armed himself on this occasion for that reason; he admits stopping the car; the State's evidence is that he stopped the car by waving a pistol with the threat, "If you do not stop it, I will kill you." As soon as the car stopped, he began striking one of the occupants of the car over the head—not the man· he killed, but another man. If he committed such acts, his right of self-defense would be impaired, and the court should have so instructed the jury. In another paragraph of the charge, the court informs the jury, under such a state of facts, if found true, when appellant would be guilty of murder and manslaughter; and out of an abundance of precaution in another paragraph of the charge he instructed the jury:

"In connection with the charge of self-defense, you are further instructed that the defendant did not waive his right of self-defense by arming himself with a pistol and seeking an interview with the deceased, Bud Lewis, for the purpose of inquiring of said Lewis an explanation of threats, if any, made by said Lewis against the defendant, or to have a conversation with Willie May Bonnepart."

Taken as a whole, the court's charge presented very fairly the law as applicable to the two theories upon which the case was tried and as made by the testimony, and is not subject to the criticism of appellant, only two paragraphs of the charge being complained of.

Special charge No. 1, requested, was apparently copied in the main charge as given, and, of course, under such circumstances there was no error in marking it refused. Special charges Nos. 3 and 4, requested by appellant, were fully covered by the court's charge. In the record there is no special charge numbered two, and if any such was requested, it was omitted from the record now before us.

We have carefully studied the record, and are of the opinion no matter is presented which would call for or authorize a reversal of the case.

The judgment is affirmed.                    *Affirmed.*